IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
(Roanoke Division)

| | |
|---|---|
| JAMES DOE,<br><br>    Plaintiff,<br><br>v.<br><br>VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, TIMOTHY SANDS, FRANK SHUSHOK, JR., ENNIS MCCRERY, FRANCES KEENE, AND KYLE ROSE, *employees of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally,*<br><br>    Defendants. | Civil Action No. \_\_\_7:18CV320\_\_\_ |

## COMPLAINT

James Doe[1] files this complaint against Defendants Virginia Polytechnic Institute and State University, Timothy Sands, Frank Shushok, Jr., Ennis McCrery, Frances Keene and Kyle Rose, for gender-based discrimination in violation of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*), violations of his rights under the due process and equal protection

---

[1] "James Doe" is not the Plaintiff's real name. Due to the nature of the allegations in this lawsuit, Mr. Doe is proceeding under a pseudonym to protect his privacy and out of fear of retaliation, and to protect the identity of his accuser, he is identifying her as "Jan Roe." In using a pseudonym, Doe relies upon the factors set out in *Co. Doe v. Pub. Citizen*, 74. F.3d 246 (4thCir. 2014).

1

requirements of the Fourteenth Amendment to the United States Constitution, the Virginia Constitution, breach of contract, and other state law causes of action. In support of this complaint, James Doe states as follows:

## THE PARTIES AND JURISDICTION

1. Plaintiff James Doe ("Mr. Doe") is, and at all times relevant to this Complaint has been, a resident of Virginia. Plaintiff was a Virginia Polytechnic Institute and State University (the "University" or "Virginia Tech") student from Fall 2014 until Spring 2016.

2. Defendant Virginia Tech is a public land-grant research university with its principal place of business located in the Commonwealth of Virginia.

3. Defendant Timothy Sands is or was at the pertinent times the President of the University and resides in Virginia.

4. Defendant Frank Shushok, Jr., Ph.D, is or was at the pertinent times a Senior Assistant Vice President for the University and resides in Virginia.

5. Defendant Ennis McCrery is or was at pertinent times a Student Conduct Hearing Agent for the University and resides in Virginia.

6. Defendant Frances Keene is or was at pertinent times a Student Conduct Hearing Officer for the University and resides in Virginia.

7. Defendant Kyle Rose is or was at the pertinent times a Student Conduct Hearing Agent for the university and resides in Virginia.

8. The Court has federal question and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because: (i) the federal law claims arise under

2

the United States Constitution, brought pursuant to 42 U.S.C. 6 1983, and under the laws of the United States, including Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88; and, (ii) the state law and common law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the United States Constitution.

9. This Court has personal jurisdiction over Defendant Virginia Tech and affiliated Defendants on the grounds that they are conducting business within the Commonwealth of Virginia.

10. Venus for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because Virginia Tech is located in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

11. Mr. Doe enrolled as an undergraduate student at Virginia Tech and matriculated in the fall semester of 2014. Beginning at that time, and continuing through the events giving rise to this action, Mr. Doe paid tuition to attend the University.

12. Mr. Doe expected to graduate in the Spring of 2018.

## THE INCIDENT

13. Jan Roe ("Ms. Roe") falsely accused Mr. Doe of sexually assaulting her in the early morning of November 20, 2015.

14. Mr. Doe and Ms. Roe were introduced by mutual friends, A.K. and S.R., who thought they might enjoy attending a date party thrown by the Zeta Psi fraternity together.

15. On November 19, 2015, Doe and Roe were picked up around 10:30 p.m. by the designated driver for the party and taken to the fraternity house on Roanoke Street.

16. Approximately 15-30 people attended the gathering, which was monitored by sober fraternity brothers to ensure there was no underage or excessive drinking occurring.

17. Both Roe and Doe drank alcoholic beverages over the course of the evening. Neither Doe nor Roe could state with certainty how much alcohol they consumed.

18. While at the Zeta Psi fraternity, Doe and Roe engaged in consensual kissing. A video was taken of Doe and Roe briefly kissing before leaving the party to head home for the night.

19. Before leaving the party, A.K. asked Roe if she was sure she wanted to go back with Doe. Roe responded in the affirmative with a nod of her head.

20. The designated driver took Doe and Roe back to Doe's apartment at approximately 1:00 a.m. on the morning of November 20, 2015. Roe sat on Doe's lap during the drive because the car was a small sedan and there was at least one other couple in the car with them.

21. According to Roe, she expected to be taken back to her own apartment but instead the two of them arrived at Doe's apartment.

22. Roe was able to walk to his apartment unassisted.

4

23. When Doe and Roe got to Doe's apartment, they went into Doe's room where they proceeded to undress.

24. Roe then laid down on Doe's bed and she and Doe began having vaginal intercourse. Doe used a condom during the encounter.

25. Doe and Roe then went to sleep in Doe's bed.

26. In the morning, Doe and Roe woke up and briefly spoke to Doe's roommate, A.H., before Doe drove Roe back to her apartment on campus.

27. On that same day, Doe sent text messages to her friend, A.K. which showed that the sexual intercourse was consensual. Specifically, in responding text messages from A.K., Doe sent several text messages, including

   a. "Don't worry mom we used protection";

   b. "Haha [sic] he's so cool and he was reall [sic] good";

   c. "too soon to add him as a snapchat friend…" (ellipses in original)

28. Over the course of Thanksgiving vacation, which began the day following the incident, Roe and Doe exchanged friendly text messages with each other about how their holiday break was going.

## THE INVESTIGATION

### I. The Disciplinary Proceeding

29. On April 4, 2016, Doe was informed by letter from Ennis McCrery, Title IX Investigator & Gender-Based Violence Prevention Specialist, that the Office of the Senior Associate Vice President for Student Affairs had received information alleging his involvement in an incident that required the attention of the Title IX

5

Case 7:18-cv-00320-EKD   Document 1   Filed 07/06/18   Page 5 of 17   Pageid#: 5

office. The letter did not identify the date or location of the alleged incident, or the policies allegedly violated. The letter informed Doe that he was to have no further contact with Roe.

30. The University's Division of Student Affairs conducted an investigation into the allegations.

31. The investigation, which was conducted by McCrery, lasted approximately four weeks. Over the course of the investigation, McCrery interviewed eight witnesses about the events of the night in question.

32. Following the investigation, a conduct hearing was held on May 27, 2016. Both Doe and Roe were present at the hearing along with hearing officers Keene and Kyle Rose, Doe's advisor and mother, Roe's advisor Smith, McCrery, and university legal representatives Steve Capaldo and Kristin Hartman.

33. Before presenting his statement, Doe informed Keene and Rose that he had obtained screenshots of text messages exchanged between Roe and her friend A.K. the day after the alleged incident, which demonstrated not only that Roe had a clear recollection of their encounter, but also that it was completely consensual. Because the Title IX investigators failed to ask the witnesses if they had relevant text messages, Doe received this evidence after the investigation had been closed. He explained to Keene and Rose that he was informed by Associate Director of Student Conduct Nannette Gordon Jimenez to present this exculpatory evidence at the hearing.

6

Case 7:18-cv-00320-EKD   Document 1   Filed 07/06/18   Page 6 of 17   Pageid#: 6

34. Keene informed Doe that she and Rose would look at the evidence during a break and would also give Roe an opportunity to review it, before deciding how they would proceed.

35. Although Doe was unable to adequately present this new evidence, Roe was permitted to give Keene and Rose witness statements at the start of the hearing.

36. During the hearing, McCrery outlined her investigation. Roe and Doe were then allowed to ask McCrery questions pertaining to the investigation. The questions had to be posed to Keene and Rose who would then rephrase the question to McCrery. The questions asked could be for clarification purposes only and could not be asked to prove a point or point out a discrepancy.

37. In her explanation of the investigation, McCrery stated that she did not contact certain witnesses because she was "trying to keep the circle of people who had been contacted as small as possible." McCrery only applied this rationale to Doe's witnesses.

38. Next, Roe and Doe were given the opportunity to ask each other questions, through Keene and Rose. Again, these questions had to be for clarification purposes only.

39. At the conclusion of the hearing, which lasted approximately one and a half hours, Doe and Roe were informed that they would be receiving a decision within the next few days.

## II. Decision & Sanctions

40. On May 31, 2016, Doe received a letter from Student Conduct, signed by

7

Case 7:18-cv-00320-EKD   Document 1   Filed 07/06/18   Page 7 of 17   Pageid#: 7

Keene and Rose, informing him that he had been found responsible for two violations of the Code.

41. Doe was charged with violating the alcoholic beverage policy of the Code which states, in part, that "each student is expected to comply with the alcohol regulations s of the Commonwealth of Virginia and the university."

42. Doe was also charged with violating the Sexual Violence – Rape policy of the Code. As such, Doe was charged with engaging in physical sexual acts "against a person's will or where a person is incapable of giving consent due to the victim's use of drugs or alcohol, or is unable to give consent due to an intellectual or other disability."

43. As a result of these findings, Doe was permanently dismissed from the University. A notation was placed on his transcript that reads, "dismissed by university action." Doe was also ordered to leave campus within 24 hours of the decision being finalized.

44. The notice also included information regarding the appeals process.

### III. Appeal of the Sanction

45. According to the University's policy, a student may appeal a decision based on a violation of a procedural guarantee, significant and relevant new information, and/or unduly harsh and/or arbitrary sanction(s).

46. Per the Virginia Tech policy, Doe appealed the finding of responsibility and the sanction on all three grounds on June 16, 2016.

47. In his appeal Doe emphasized the numerous due process violations that occurred during the investigation and at the hearing, provided new evidence to further clear his name. He argued that the sanction was unduly harsh in comparison to similar complaints heard by the Student Conduct Council.

48. On July 8, 2016, Doe received a letter from Angela Simmons, the Assistant Vice President for Student Affairs, informing him that there was insufficient cause to reverse the decision made by the hearing officers and that the sanction imposed was "in line with the severity of the student conduct code violation of sexual violence – rape."

49. Simmons' finding was the final decision in the matter.

## COUNT I – VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983

50. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

51. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of the law."

52. Virginia students at public post-secondary schools, like Virginia Tech, have a liberty and property interest in their educations, which is protected by the Fourteenth Amendment's Procedural Due Process Clause.

53. Mr. Does has a liberty interest in his good name, reputation, honor, and integrity which is protected by the Fourteenth Amendment's Procedural Due Process Clause.

54. Because of Mr. Doe's various liberty and property interests protected by the Procedural Due Process Clause of the Fourteenth Amendment, Virginia Tech was obligated to provide him with a fundamentally fair and unbiased disciplinary process before punishing him for alleged misconduct.

55. At a minimum, Virginia Tech was required to afford him proper notice of the allegations against him and a meaningful opportunity to be heard and to defend himself.

56. The University denied Mr. Doe's due process rights when it failed to properly notify him of the charges against him, failed to perform a thorough and impartial investigation, failed to adequately disclose potential conflicts of interest among the various administrators involved in the conduct process, and disregarded Mr. Doe's exculpatory evidence, all while favoring Ms. Roe's unsubstantiated and unreliable accusations.

57. Mr. Doe was dismissed from Virginia Tech as a result of the biased and unjust investigation process, unfairly delaying his education.

58. The finding of responsibility and expulsion will taint Mr. Doe's student record, which will follow him throughout any other educational or employment opportunities.

10

Case 7:18-cv-00320-EKD   Document 1   Filed 07/06/18   Page 10 of 17   Pageid#: 10

59. As a result of these due process violations, Mr. Doe was expelled and suffers ongoing harm to his reputation and numerous damages. He was forced to withdraw from his classes, was significantly delayed in finding an alternate route to education, and is marred by an erroneous record on his transcript that will negatively affect future educational and employment opportunities.

60. Further, Mr. Doe incurred costs to relocate to his parent's home and applying to other universities around the country.

WHEREFORE, plaintiff James Doe prays judgment as hereinafter set forth.

## COUNT II – VIOLATION OF THE DUE PROCESS CLAUSE OF THE VIRGINIA CONSTITUTION

61. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

62. The Virginia Constitution states that "no person shall be deprived of his life, liberty, or property interests without due process of law." Va. Const. art. I, § 11.

63. For the reasons stated under Count I, the University deprived Mr. Doe of various liberty and property interests without due process of law.

64. Accordingly, all Defendants are liable to Mr. Doe for violations of the Virginia Constitution and Defendants McCrery, Green, and Rose are, liable in their personal capacities, for all damages arising out of those violations.

## COUNT III – VIOLATION OF TITLE IX (20 U.S.C. § 1681 *et seq.*)

65. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

11

66. Virginia Tech receives federal funding, including in the form of federal student loans given to students and is subject to the provisions of Title IX.

67. Title IX prohibits gender discrimination in the educational setting.

68. Virginia Tech erroneously found Mr. Doe responsible for sexual assault. Indeed, he is innocent of the allegation.

69. Ms. McCrery disregarded Mr. Doe's statements, failed to investigate evidence that would have exculpated him of the alleged offenses, and gave preference to the implausible and inconsistent statements of Ms. Roe because of gender bias.

70. The serious and deliberate procedural shortcomings in the investigation and adjudication of the allegations against Mr. Doe prevented him from fully defending himself.

71. Moreover, Virginia Tech initiated its investigation in the shadow of (1) Office of Civil Rights ("OCR") investigations into how colleges and universities handle allegations of sexual assault; and, (2) innumerable reports covered in the national media that suggest the pervasive nature of sexual assault committed by male students on college campuses throughout the nation. As a reaction to the scrutiny of these OCR investigations and national stories, and in order to be perceived as aggressively addressing the perceptions that sexual assault against female students is rampant on college and university campuses, Virginia Tech treats male students accused of sexual misconduct by female students more aggressively than it otherwise would, and more aggressively than it would treat similar complaints made by male students against female students.

12

72. Virginia Tech has engaged in a pattern of unfair investigations and adjudications resulting in serious sanctions being imposed on male students, while not making comparable efforts with respect to allegations of sexual violence and abusive conduct made against female students.

73. Here, the decision erroneously finding Mr. Doe responsible for the alleged sexual misconduct was motivated by gender bias against accused male students.

WHEREFORE, plaintiff James Doe prays judgement as hereinafter set forth.

## COUNT IV – NEGLIGENCE

74. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

75. In its interactions with Mr. Doe and in conducting its investigation and adjudication of Ms. Roe's complaint, the University owed a duty to Mr. Doe to exercise reasonable care, with due regard for the truth, established polocies and procedures, and the important and irreversible consequences of its actions.

76. The University also owed a duty to Mr. Doe to take care in hiring and providing proper training for all faculty and staff members who would interact with Mr. Doe, to ensure that they understood the requirements of Title IX and the University policies and procedures and would protect Mr. Doe's due process rights as they conducted an impartial investigation.

77. Such duties arise from the obligations delineated in the University's own policies and procedures and directives issued by the U.S. Department of Education's Office for Civil Rights.

13

78. Ms. McCrery negligently failed to fairly and adequately investigate the allegations and gather the information required to reach an informed conclusion concerning accountability.

79. Virginia Tech, acting through its agents and employees, breached a duty to Mr. Doe by carelessly, improperly, and negligently performing its assigned duties, mischaracterizing the truth, and facilitating a process that violated Mr. Doe's constitutionally protected rights and interests.

80. As a direct and proximate result of the University's negligence and breach of duty, Mr. Doe suffered loss of educational opportunities, loss of income, and other future financial losses caused by his expulsion. Further, the mark on his student record significantly delayed Mr. Doe's ability to enroll in another university and to pursue his desired degree program and will have a lasting impact on his ability to find employment in his field of choice.

81. As a further direct and proximate result of the University's negligence, carelessness, and breach of duty, Mr. Doe suffered and will continue to suffer from mental and emotional injuries for which compensation is warranted.

WHEREFORE, plaintiff James Doe prays judgment as hereinafter set forth.

## COUNT V – BREACH OF CONTRACT

82. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

83. Mr. Doe paid the University sums of money for his education, and in return, the University contracted to provide Mr. Doe with access to its undergraduate degree program.

84. Mr. Doe's enrollment in, and attendance of, classes at Virginia Tech created in Mr. Doe an expectation that he would be allowed to continue his course of study until he earned his degree from the University, provided that he maintained satisfactory grades and complied with University rules and polices.

85. Accordingly, an implied contractual relationship exists between Mr. Doe and the University, under which each party owes the other certain duties.

86. Under the implied contract between Mr. Doe and Virginia Tech, Virginia Tech has a duty not to suspend or expel Mr. Doe for disciplinary misconduct arbitrarily, capriciously, maliciously, discriminatorily, or otherwise in bad faith.

87. The University breached these contractual obligations by suspending Mr. Doe for sexual misconduct through an investigative and adjudicative process that—in the ways, and for the reasons, set out above—was arbitrary, capricious, malicious, discriminatory, and conducted in bad faith.

88. As a direct and proximate result of this breach, an erroneous finding that Mr. Doe committed sexual assault has been made part of Mr. Doe's educational records, which may be released to educational institutions and employers to whom Mr. Doe applies, substantially limiting his ability to gain acceptance to graduate school, or to secure future employment.

89. Accordingly, Virginia Tech is liable to Mr. Doe for breach of contract and for all damages arising therefrom.

WHEREFORE, plaintiff James Doe prays judgment as hereinafter set forth.

## COUNT VI – DECLARATORY JUDGMENT

90. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

91. Virginia Tech violated Mr. Doe's due process rights when it conducted a biased investigation, disregarded Mr. Doe's witnesses and evidence, and allowed Ms. Roe's refutable and conflicting information and allegations to go virtually uninvestigated.

WHEREFORE, plaintiff James Doe prays that judgement be entered in his favor for:

(1) compensatory and punitive damages in an amount to be determined at trial;

(2) a permanent injunction (a) restraining Virginia Tech, and all those acting in consort with Virginia Tech, from continuing to enforce any punishment against him and from making any notation on his transcript or keeping any record relating to his disciplinary hearing in Mr. Doe's education records, and (b) ordering that Virginia Tech rescind and expunge the sanctions entered against him by Virginia Tech;

(3) a declaration that (a) the University violated Mr. Doe's due process rights and its actions were motivated purely by gender, and (b) Mr. Doe was unjustly sanctioned by Virginia Tech;

16

(4) costs, including attorneys' fees under Title IX and 42 U.S.C. § 1988, and such further relief as is just and equitable.

DATED: July 6, 2018

Respectfully submitted,

By: _____

Harvey & Binnall, PLLC
Jesse R. Binnall
Louise T. Gitcheva
Sarah E. York
717 King Street, Suite 300
Alexandria, Virginia 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
Email: jbinnall@harveybinnall.com
      lgitcheva@harveybinnnall.com
      syork@harveybinnal.com


Nesenoff & Miltenberg LLP
Andrew T. Miltenberg
Tara Davis
363 Seventh Avenue, 5th Floor
New York, NY 10001-3904
Telephone: (212) 736-4500
Facsimile: (212) 736-2260
Email: amiltenberg@nmllplaw.com
      tdavis@nmllplaw.com
*Pro hoc vice application forthcoming*