UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Roanoke Division)

| | | |
|---|---|---|
| JAMES DOE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 7:18-cv-320 |
| v. | ) | |
| | ) | |
| VIRGINIA POLYTECHNIC INSTITUTE | ) | |
| AND STATE UNIVERSITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)**

Plaintiff James Doe ("Doe") plausibly pleaded facts to support his claims against Virginia Tech and its agents. Defendant Frank Shushok, Jr. ("Shushok") has demonstrated his bias against males accused of sexual assault. He was specifically involved in Doe's appeal process. Moreover, Doe has plausibly pleaded that Shushok is in charge. In his capacity as a Senior Vice President and Interim Title IX Coordinator, he sets the tone and makes policy, officially or unofficially. When he speaks orally, digitally, or in writing, his employees listen. Thus, it is plausible Shushok's views would be incorporated into policy by his agents during Doe's appeal. These facts, as more clearly explained below, support Doe's Title IX and due process claims, as bias is prohibited both by the Fourteenth Amendment's Due Process Clause and Title IX. The motion to dismiss should be denied.

As noted by Defendants, the Court previously informed Doe that his Due Process and Title IX claims with respect to the initial hearing process were time-

barred. *Doe v. Va. Polytechnic Inst. & State Univ.*, Nos. 7:18-cv-170; 320; 492; 523, 2019 U.S. Dist. LEXIS 137871, at *30 (W.D. Va. Aug. 15, 2019). Doe also previously conceded that the Court lacks subject matter jurisdiction over his breach of contract claim. *Id.* at 11. Doe did not file a motion to reconsider and will not substantively address those issues in this opposition. While Doe believes he is correct about those issues, the claims have already been decided by this Court and do not need to be re-litigated at this time. Doe included the previously stated facts for context. Due to Defendants' assertion of sovereign immunity as a defense, this Court is deprived of subject matter jurisdiction. Consequently, Doe will dismiss the state causes of action and bringing those in state court.

### New and Relevant Facts

Defendant Timothy Sands is or was at the pertinent time the President of the University. Amend. Compl. ("Dkt. 74."), ¶ 3

Ennis McCrery ("McCrery") is or was at the pertinent time a Student Conduct Hearing Agent for Virginia Tech. Dkt. 74 at ¶ 5. McCrery worked collaboratively with the Women's Center during the relevant timeframe to reorganize and centralize the work of the Sexual Violence Prevention Council with a goal of implementing new gender-based violence prevention messages and campaigns, including an initiative on "healthy masculinity." Dkt. 74 at ¶ 30. McCrery conducted the investigation into Doe. Dkt. 74 at ¶ 32.

Shushok is or was at the pertinent time a Senior Vice President and Interim Title IX Coordinator for Virginia Tech. Dkt. 74. at ¶ 4. Shushok referred the

investigation to Student Conduct for resolution through a student conduct hearing. Dkt. 74 at ¶ 33.

Shushok oversees the Office for Equity and Accessibility, the office in charge of Title IX issues. Dkt. 74 at ¶ 34. He has publicly demonstrated his bias against males accused of student misconduct on social media. *Id.* For instance:

(i)    He has posted to Twitter: "How do we reduce the horrifying amount of sexual violence in this country? We talk to our boys";

(ii)   He also posted on Twitter: "We don't talk nearly enough about the impact of drinking on boys…They become less able to read social cues, less likely to respect 'no' and more likely to use alcohol as an excuse to engage in misconduct";

(iii)  He advertised a screening of the movie The Hunting Ground at Virginia Tech, which has been described as a "shockingly biased exercise in extremist propaganda intent on further chipping away the rights of presumptively innocent college men."

(iv)   Cited to an article from *The Washington Post* about the suspension of a fraternity at the University of Richmond and quoted, "Tonight's the type of night that makes fathers afraid to send their daughters away";

(v)    Cited on Twitter to the debunked statistic that one in five college aged women will be sexually assaulted;

(vi)   Has been quoted as saying "when [sexual violence is] reported, we will do everything within our power to care for and protect the **people who**

report it." (emphasis supplied)

https://vtnews.vt.edu/articles/2016/01/012116-dsa-titleix.html; and

(vii)    "I believe there's significant cultural messaging that reinforces notions about what it means to be a man and what it means to be a woman. I think it plays into the kinds of incidents we have and behaviors we see." https://vtnews.vt.edu/articles/2016/01/012116-dsa-titleix.html.

Dkt. 74 at ¶ 34.

Frances Keene ("Keene") is or was at the pertinent time a Student Conduct Hearing Officer for Virginia Tech. Dkt. 74 at ¶ 6. Kyle Rose ("Rose") is or was at the pertinent time a Student Conduct Hearing Agent for Virginia Tech. Dkt. 74 at ¶ 7. Both Keene and Rose were the hearing officers assigned to Doe's hearing. Dkt. 74 at ¶ 35. They also made the decision to find him responsible for sexual misconduct and determined the sanctions for this alleged misconduct. Dkt. 74 at ¶¶ 43-46.

The appeal process at Virginia Tech employs different procedures in Title IX cases than the procedures for other student conduct cases. In regular student conduct cases, only an accused student can appeal. In Title IX cases, both the accused and the accuser can appeal. Virginia Tech officials are more likely to carefully consider an appeal from a female appellant than a male appellant. In fact, it is very rare for the University to overturn findings of responsibility against male students accused of sexual misconduct, even when the evidence in favor of the male student is clear (as it was in this case). Dkt. 74 at ¶ 49. According to the University's policy, a student may only appeal a decision based on a violation of a procedural guarantee, significant and

relevant new information, and/or unduly harsh and/or arbitrary sanction(s). Dkt. 74 at ¶ 50.

In addition to initially referring the case to a hearing for resolution, Shushok also served as an appeal officer, receiving Doe's appeal on June 16, 2016 and thereafter appointing the appellate officer to decide the appeal. Dkt. 74 at ¶ 51.

Per the Virginia Tech policy, Doe appealed the finding of responsibility and the sanction on all three grounds. Dkt. 74 at ¶ 52. In his appeal Doe emphasized the numerous due process violations that occurred during the investigation and at the hearing. For instance, (i) Doe's witnesses were not permitted to testify at the hearing despite being advised beforehand that they would be permitted to do so, (ii) Roe was permitted to submit during the hearing statements from additional witnesses who were known and available during the investigation but were not interviewed by the investigator, thus depriving Doe of his ability to question them, (iii) contrarily, during the hearing, Doe was not permitted to submit text messages from the morning after the alleged incident exculpating him of wrongdoing; (iv) the University permitted a police officer to opine on Roe's credibility which gave her statement the imprimatur of law enforcement even though no criminal charges were filed against Doe; and (v) one of the hearing panel members sat on the Title IX advisory board with Roe's advisor and thus, had a conflict of interest. Dkt. 74 at ¶ 53. Doe also provided new evidence to further clear his name and argued that the sanction was unduly harsh in comparison to similar complaints heard by the Student Conduct Council.  Dkt. 74 at ¶ 54.

On July 8, 2016, Doe received a letter from Angela Simmons ("Simmons"), the Assistant Vice President for Student Affairs, informing him that there was insufficient cause to reverse the decision made by the hearing officers and that the sanction imposed was "in line with the severity of the student conduct code violation of sexual violence – rape." Dkt. 74 at ¶ 55. His appeal was denied. *Id.*

The appeal process did not give Doe a meaningful opportunity to challenge the finding of responsibility and clear his name. Dkt. 74 at ¶ 72. Specifically, (i) the arguments raised in his appeal were dismissed without due consideration, (ii) he was limited in the grounds upon which he could appeal, which did not include an opportunity to challenge the findings, and (iii) Shushok's various roles created a conflict of interest when he was not only responsible for overseeing the entire process, but also referred the case to a hearing for resolution initially, received Doe's appeal, and appointed the appellate officer to hear the matter, all of which contributed to an appeal process that lacked adequate due process. Dkt. 74 at ¶ 72.

Shushok had the responsibility to ensure a fair and equitable appeals process was carried out and had the authority to take any action necessary to ensure a correct outcome. Dkt. 74 at ¶ 93. Nevertheless, he failed to intervene and instead, allowed the incorrect finding and sanction of expulsion to stand. Dkt. 74 at ¶ 94.

Doe was banned from campus and unable to attend classes as a result of the biased and unjust investigation process, unfairly delaying his education. Dkt. 74 at ¶ 73. The finding of responsibility and expulsion will taint Doe's student disciplinary record, which will follow him throughout any other education or employment

opportunities. Dkt. 74 at ¶ 74. The notation of expulsion on his student transcript will further severely limit his ability to find academic or career success. It will cause other educational institutions and many employers to reject him because of the wrongful disciplinary action. Dkt. 74 at ¶ 75.

<u>Argument</u>

### 1. Standard of Review

A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In considering such a motion, the court should accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). At this juncture, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The relevant question for a district court is whether "the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569, n. 14 (2007). Accepting all factual allegations in the Amended Complaint as true, Doe has pleaded facts sufficient to establish plausible claims for relief.

### 2. Doe States an Actionable Due Process Claim Regarding the Appeal Process

Doe was denied his due process rights when Virginia Tech applied a policy that failed to provide an adequate appeal process. Moreover, the appeal panel was hopelessly tainted by bias.

State actors that adjudicate important rights are constitutionally required to protect parties' due process rights. *Goldberg v. Kelley*, 397 U.S. 254, 262 (1970). The due process protections apply to students at public educational institutions. *Goss v. Lopez*, 419 U.S. 565 (1975). Neither the Supreme Court nor the Fourth Circuit have defined the precise process due to accused students. The Supreme Court has, however, listed factors to consider in determining whether a person has received sufficient due process protections: (1) the private rights affected by the official action; (2) the risk of erroneous deprivation of the private right because of procedural flaws; (3) any probable value of additional or substitute procedural safeguards; and (4) any governmental interests that would be affected by additional safeguards, such as fiscal and administrative burdens. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

While this balancing test is flexible, certain aspects of due process are cornerstones to any fair proceeding. "The fundamental requisite of due process of law is the opportunity to be heard." *Goldberg*, 397 U.S. at 267. When important facts are in dispute, or when a party challenges the application of rules or policies to the facts in a particular case, parties to such disputes are entitled to an effective opportunity to defend themselves by confronting adverse witnesses and presenting arguments and evidence orally. *Id.* at 268. "And, of course, **an impartial decision-maker is essential.**" *Id.* at 271 (emphasis added).

Defendants focus on notice and the opportunity to be heard, but completely ignore Doe's facts relating to bias. Further, Defendants ignore the plausibility that if

the process is infected with bias, Doe never had a *meaningful* opportunity to be heard, including during his appeal.

Here, Doe has met the threshold plausibility standard relating to Shushok and the appeal process. The facts relating to the biased investigation provide the context within which the appeal was provided to Doe. Shushok is in charge. In his capacity as a Senior Vice President and Interim Title IX Coordinator, he sets the tone and makes policy, officially or unofficially. It is plausible that his views would be incorporated into policy by his agents and therefore by Virginia Tech itself, thus compromising the impartiality of the investigation and appeal process.

### a.  Doe has Property Interest in his Education at Virginia Tech[1]

While a protected property interest cannot be created by the Fourteenth Amendment itself, courts within the Fourth Circuit have consistently taken the approach of assuming "that a person has a constitutionally protectable property interest in enrollment in a state college, university, or other post-secondary educational facility." *Doe v. Rector & Visitors of George Mason Univ.,* 132 F. Supp. 3d 712, 721 (E.D. Va. 2015).[2] In *Doe v. Alger*, this Court held that "property interests

---

[1] Although Doe believes he has a liberty interest in his education at Virginia Tech, the Court has already held that no such liberty interest exists. *Doe v. Va. Polytechnic Inst. & State Univ.*, Nos. 7:18-cv-170; 320; 492; 523, 2019 U.S. Dist. LEXIS 137871, at *28 (W.D. Va. Aug. 15, 2019). Doe will not re-litigate this issue here.

[2] Courts outside of the Fourth Circuit have also applied a liberty or property interest in attending public school. *Flaim v. Med. College of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005) (*citing Goss*, 419 U.S. at 575 and holding that a university student's "private interest is significant. It extends beyond his immediate [student] standing...and could interfere with later opportunities for higher education and employment"); *Gorman v. Univ. of Rhode Island*, 837 F.3d 7, 12 (1st Cir. 1988) (a student's interest "in pursuing an education is included within the fourteenth amendment's protection of liberty and property interest"); *Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975) ("We have no difficulty in concluding in light of *Goss*, *supra*, where the Supreme Court recognized a *property right* in public school students that certainly such a right must be recognized to have vested...and the more

may arise from...regulations, municipal ordinances, or from an express or implied contract, such as rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Doe v. Alger,* 175 F. Supp. 3d 646, 657 (W.D. Va. 2016) (internal citations omitted). Finding that such entitlement to Plaintiff's continued enrollment may have arisen through the university's adoption of its policies allowing for dismissal of students only for cause, the Court denied defendants' motion to dismiss plaintiff's procedural due process claim. *Id.*

Analogously, Doe pleads that his enrollment in, and attendance of, classes at Virginia Tech "created in Doe an expectation that he would be allowed to continue his course of study until he earned his degree from the University, provided that he maintained satisfactory grades and complied with University rules and policies." Dkt. 74 at ¶ 98.

Doe also alleged an implied contract existed between him and Virginia Tech. Dkt. 74 at ¶¶ 96-103. While his claim for breach is not at issue, the implied contract alleged gives rise to a property interest. *Alger,* 175 F. Supp. 3d at 657. Accordingly, Doe should likewise be permitted the "opportunity to prove the legitimacy of his claim to a property right." *Alger,* 175 F. Supp. 3d at 658.

Similar to *Alger*, the Seventh Circuit holds that "the basic legal relation" between a student and a university or college is contractual in nature. *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009). "A student may establish that an implied contract existed between himself and the university that entitled the

---

prominently so in that she paid a specific, separate fee for enrollment and attendance" (emphasis in original)).

student to a specific right, such as the right to a continuing education or the right not to be suspended without good cause." *Id.* That court further pointed to "catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant" as becoming "part of the contract." *Id.*

Here, Doe alleged that he understood and expected that Virginia Tech would only suspend a student after a finding for cause and after a "prompt, adequate, reliable, and impartial Title IX investigation" as noted in Virginia Tech's Sexual Harassment and Sexual Violence Investigation Procedures policy in effect during the relevant timeframe. Dkt. 74 at ¶ 66[LD1]. Virginia Tech argues that this language was not included in the Title IX procedure but was contained in a brochure. Dkt 78 at 6, n. 3. As the court noted in *Bissessur*, "catalogues" and "circulars" (such as brochures) became part of the implied contract with Doe. *Bissessur*, 581 F.3d at 601. These facts plausibly give rise to a property right just as in *Alger*.

Additionally, Virginia's statutes relating to higher education give rise to a property right in public higher education. Va. Code § 23.1 *et seq.* Specifically, the Virginia Higher Education Act of 2011 (Va. Code § 23.1-301 *et seq.*) states that its objective is to "ensure that these education and economic opportunities are accessible and affordable **for all capable and committed Virginia students**" Va. Code § 23.1-300(B) (emphasis added). Under Chapter 26, which regulates Virginia Tech specifically, the Virginia Code gives the power to the Board [of visitors of Virginia Polytechnic Institute and State University] to "regulate the government and discipline of students." Va. Code § 23.1-2603(B). The Board periodically reviews and

11

approves the student Hokie Handbook, including the Student Code of Conduct "to ensure that they reflect the policies passed by the Board and that any changes that have been made are appropriate and accurate."[3] Thus, the policies in the Hokie Handbook are ratified by the Board and guaranteed to the students under Virginia law. It necessarily follows that Virginia, and specifically Virginia Tech, students have a right to their continued, state recognized, enrollment status unless the University follows the necessary procedures to suspend or expel them.

This is further proven by 23.1-900, at issue in this matter. Va. Code § 23.1-900. The statute specifically requires a public institution of higher education to "adopt a procedure for removing such [sexual misconduct] notation from the academic transcript of any student who is subsequently found not to have committed an offense involving sexual violence under the institution's code, rules, or set of standards governing student conduct." Va. Code § 23.1-900(B)(b). This statute's explicit "procedure" requirement reinforces higher education students' right to fair procedures relating to sexual misconduct because there is an implicit understanding that the required procedures will be fair

Doe's property interest is not only guaranteed by Virginia Tech's policies, but also by statute as well as his implied contract with the University. Based on the foregoing, it is clear that Doe's property interests are implicated because he was suspended from a public university without adequate process.

---

[3] *Resolution to Ratify the Student Code of Conduct*, (2018), https://bov.vt.edu/assets/Attachment%20K_Resolution%20to%20Ratify%20Student%20Conduct%20Code_August%202018.pdf (also stating "WHEREAS, by state statute, the Virginia Tech Board of Visitors is charged with regulating the government and discipline of students").

### b.  Doe Did Not Receive Due Process During His Appeal

While a full-scale adversarial proceeding is not required in the context of a university disciplinary matter, the University was required to provide at least minimal procedural due process protections, including (1) notice and (2) a meaningful opportunity to be heard. *See Mathews v. Eldridge,* 424 U.S. 319 (1976). The Fourth Circuit has adopted the standard set forth in *Dixon v. Ala. State Bd. Of Educ.* to determine whether due process was afforded in the context of a student disciplinary matter where a student potentially faces expulsion, as in the case of sexual misconduct allegations. *Doe v. Rector & Visitors of George Mason Univ.,* 149 F. Supp. 3d 602, 615 (E.D. Va. 2016), *citing Dixon v. Ala. State Bd. of Ed.,* 294 F.2d 150 (5th Cir. 1961). The mere fact that Virginia Tech performed an investigation, held a hearing, and allowed an appeal, does not in and of itself establish that the requisite due process was afforded, as Defendants suggest. Defendants must provide a meaningful opportunity to be heard and must not be biased.

Virginia Tech and Shushok deprived Doe of a meaningful opportunity to be heard during the investigation, hearing, and appeal when they disregarded the various procedural errors raised related to the University's investigative process, overlooked the new evidence submitted to clear his name, and upheld the disproportionate and unwarranted sanction. Dkt. 74 at ¶ 72.

### c.  Doe's Request for Injunctive Relief is Not Barred by Qualified Immunity

This Court already held that Doe's claims for injunctive relief fall within the *Ex Parte Young* exception and are not barred, *Doe v. Va. Polytechnic Inst. & State*

13

*Univ.,* Nos. 7:18-cv-170; 320; 492; 523, 2019 U.S. Dist. LEXIS 137871, at *9-10 (W.D. Va. Aug. 15, 2019). Virginia Tech and its officials are not immune.

The Supreme Court has recognized a vital exception to the general rule that state officials sued in their official capacities are not "persons" within the meaning of § 1983; namely, "[w]hen sued for prospective injunctive relief, a state official in his official capacity *is* considered a "person" for § 1983 purposes." *Will,* 491 U.S. at 71 n. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985))). This exception recognizes the principle of *Ex Parte Young,* (209 U.S. 123 (1908)) which provides that a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity. *See Rounds v. Or. State Bd. of Higher Educ.,* 166 F.3d 1032, 1036 (9th Cir.1999) ("*Ex Parte Young* provided a narrow exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against unconstitutional actions taken by state officers in their official capacities."); *Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 840 (9th Cir.1997) ("[T]he Eleventh Amendment allows only prospective injunctive relief to prevent an ongoing violation of federal law."). *Flint v. Dennison,* 488 F.3d 816, 825 (9th Cir. 2007).

Moreover, the Eleventh Amendment does not bar Doe from pursuing his claims against the individually named defendants for monetary damages. *See Tigrett v. Rector & Visitors of Univ. of Virginia,* 97 F. Supp. 2d 752, 756 (W.D. Va. 2000) ("the

14

11th Amendment neither bars Tigrett's suit against the individual defendants in their official capacities to the extent that he seeks prospective injunctive relief, *see Cobb*, 69 F. Supp. 2d at 824; *see also Quern v. Jordan,* 440 U.S. 332, 337 (1979); *Ex Parte Young,* 209 U.S. 123 (1908), nor his suit against the individual defendants in their personal capacities for monetary damages").

Here, Plaintiff clearly asserts claims for both monetary damages "compensatory and punitive damages" and prospective injunctive relief "a permanent injunction (a) restraining Virginia Tech, and all those acting in consort with Virginia Tech, from continuing to enforce any punishment against him and from making any notation on his transcript or keeping any record relating to his disciplinary hearing in Doe's education records, and (b) ordering that Virginia Tech rescind and expunge the sanctions entered against him by Virginia Tech." Dkt. 74 at 20. Accordingly, the well-established exception to the general rule prohibiting § 1983 actions against individual defendants named in their official capacities applies and Doe is entitled to pursue this claim for prospective injunctive relief.

### d. Doe has a Valid Claim Against Defendant Sands in His Official Capacity

Part and parcel with Doe's claim for injunctive relief is an obligation to appropriately identify the individual state official charged with enforcing the matter at issue. Here, because Doe seeks to rescind and expunge the sanctions against him, the authority to carry out such a task would presumably lie with the President of the University (Defendant Sands).

15

Sands, as President of Virginia Tech, directs and approves the policies of Virginia Tech. As supervisors, they can be held liable for violations of Doe's rights under section 1983 "if the evidence showed that conduct directly causing the constitutional deprivation was done to effectuate an official policy or custom" for which they are "responsible." *Fisher v. Washington Metropolitan Area Transit Authority*, 690 F.2d 1133, 1143 (4th Cir. 1982), *abrogated on other grounds*, *County of Riverside v. McLaughlin,* 500 U.S. 44 (1991), *see also Dodds v. Richardson,* 614 F.3d 1185, 1199 (10th Cir. 2010) (concluding that "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights...secured by the Constitution") (internal citation and quotation omitted).

As described above, Doe has alleged a deprivation of actual constitutional rights, i.e  an impartial tribunal and the right to present evidence and witnesses in support of his defense on appeal. Accordingly, Doe has a valid suit against Defendant Sands.

### 3.  Doe has Alleged Facts Showing a Violation of Title IX in the Appeal Process

Title IX bars the imposition of university discipline where gender is a motivating factor in the decision. In *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994), the Second Circuit held that a plaintiff's challenge to a university disciplinary proceeding on grounds of gender bias will generally fall within two

categories. Under the first category, the claim is that there is an "erroneous outcome" in plaintiff being found to have committed an offense and disciplined. *Id.* Under the second category, the plaintiff alleges "selective enforcement" in terms of selective initiation or severity of penalty. *Id.* Concerning a claim under the "erroneous outcome" category, the *Yusuf* court specified "the pleading burden in this regard is not heavy. For example, a complaint may allege particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge. A complaint may also allege particular procedural flaws affecting the proof." *Yusuf v. Vassar Coll.,* 35 F.3d at 715.

The *Yusuf* standard remains the controlling legal standard for a gender bias claim brought under Title IX. *See Doe v. Washington & Lee Univ.,* No. 6:14-CV-00052, 2015 WL 4647996, at *9 (W.D. Va. Aug. 5, 2015). The Seventh Circuit, however, recently simplified the test for Title IX, holding, "We prefer to ask the question more directly: do the alleged facts, if true, raise a plausible inference that the university discriminated against [Doe] "on the basis of sex"?" *Doe v. Purdue*, 928 F.3d 652, 667-68 (7th Cir. 2019). Doe's claim survives either test.

Since Title IX was modeled after Title VI and VII of the Civil Rights Act of 1964, courts have frequently applied Title VII's framework and principles to Title IX claims. *See Jennings v. Univ. of N. Carolina,* 482 F.3d 686, 695 (4th Cir. 2007) ("We look to case law interpreting Title VII of the Civil Rights Act of 1964 for guidance in evaluating a claim brought under Title IX.") For instance, because evidence of

discrimination would most likely be within the defendants' sole possession and control at the pleading stage, it is rare to have concrete evidence of discrimination. *See Grajales v. P.R. Ports Auth.,* 682 F.3d 40, 49 (1st Cir. 2012) ("'[s]moking gun' proof of discrimination is rarely available... at the pleading stage").

Here, the Court's role is to determine whether a claim has facial plausibility – that is, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Blank v. Knox Coll.,* No. 14-CV-1386, 2015 WL 328602, at *2 (C.D. Ill. 2015) (internal citations omitted).[4] Doe has plausibly alleged that there was an erroneous finding and he was innocent of the charges. Dkt. 74 at ¶¶ 13-28, 53, 54, 85. Had the investigators performed a thorough and objective investigation, they would have discovered that Roe sent text messages to a friend immediately after the sexual encounter with Doe. These texts prove that she not only recalled the interaction (in contrast to her later statements), but that it was also consensual (also in contrast to her later statements). Dkt. 74 at ¶ 27. Although these allegations relate to the

---

[4] The Second Circuit holds: "*Iqbal* does not require that the inference of discriminatory intent supported by the pleaded facts be *the most plausible* explanation of the defendant's conduct." *Doe v. Columbia,* 831 F.3d at 57. Adopting the legal principles from Title VII cases, Judge Leval clarified the pleading standards for a Title IX claim at the motion to dismiss stage in *Doe v. Columbia* as follows: "[a] complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent, like a complaint under Title VII, if it pleads specific facts that support a *minimal plausible inference* of such discrimination." *Doe v. Columbia,* 831 F.3d at 56. Judge Leval's decision follows the *McDonnell-Douglas* framework in which plaintiffs alleging employment discrimination in violation of Title VII need present only minimal evidence supporting an inference of discrimination in order to prevail. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), *holding modified by Hazen Paper Co. v. Biggins,* 507 U.S. 604 (1993). Extending this principle to the Title IX context, the Second Circuit noted: "[w]hen the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side…it is plausible to infer…that the evaluator has been influenced by bias." *Doe v. Columbia,* 831 F.3d at 57.

underlying investigation, they also relate to the appeal because these facts were ignored by the appeal panel. Dkt. 74 at ¶¶ 53, 93-94. All of the foregoing indisputably establishes that Doe did not engage in any conduct violative of the University's policies. Clearly, Doe has satisfied the "not heavy" pleading standard for the first element as articulated by *Yusuf.*

Doe has also sufficiently alleged that the erroneous finding was motivated by gender bias. Not only does Doe address the procedural errors that arose from a biased investigation process, but he also outlines the internal and external pressures that contributed to the gender-biased finding, including ongoing OCR investigations, and numerous media reports surrounding universities' handling of sexual assault committed by male students on college campuses around the country. Dkt. 74 at ¶ 88. Doe also pleads  Virginia Tech treats male students accused of sexual misconduct more aggressively than it would treat such complaints filed against female students, in light of reaction to these pressures. Dkt. 74 at ¶ 88. Further, Doe describes that Virginia Tech has engaged in a pattern of unfair investigations and serious sanctions imposed on male students, but not on female students. Dkt. 74 at ¶ 89.

Similarly, the appeal process for Title IX cases at Virginia Tech disproportionately and negatively affects male students. Dkt. 74 at ¶ 90. Appeals from male students are almost certain to fail. The appeal process itself favors female students because complainants in Title IX cases (who are overwhelmingly female) are given the right to appeal adverse decisions, unlike complainants in non-Title IX cases, essentially subjecting male respondents to double jeopardy. Dkt. 74 at ¶ 90. The

University favors female complainants over male complainants. Dkt. 74. at ¶ 91. If a male makes a Title IX complaint against a female, University officials are more likely to ignore the complaint and not even bring it forward to a hearing than if the complaint was brought by a similarly situated male. *Id.*

Defendant Shushok has demonstrated his bias against males accused of sexual assault, as previously explained. He was specifically involved in Doe's appeal process. Dkt. 74 at ¶ 51. Moreover, Doe plausibly pleaded, relating to Shushok, that he is in charge. In his capacity as a Senior Vice President and Interim Title IX Coordinator, he sets the tone and makes policy, officially or unofficially. Thus, it is plausible his views would be incorporated into policy by his agents during the investigation, hearing, and appeal. This supports Doe's Title IX and due process claims.

Here, based on the totality of the circumstances, Doe plausibly demonstrated how the erroneous finding against him was motivated by gender bias starting during his investigation and continuing through the appeal. *See Doe v. Washington and Lee Univ.*, No. 6:14-cv-00052, 2015 WL 4647996 at *10 (W.D. Va. Aug. 5, 2015) ("Given the totality of the circumstances, including the flaws in the proceedings and statements made by W&L officials, Plaintiff has plausibly established a causal link between his expulsion and gender bias"). Analogous to the Title VII framework, it is generally accepted that, in the discrimination context, a court "cannot hold plaintiffs to a standard that would effectively require them, pre-discovery, to plead evidence." *Cooperman v. Individual Inc.*, 171 F.3d 43, 48-9 (1st Cir. 1999) (citation omitted). Here, a bias against Doe as the male accused of misconduct was a factor leading to

the erroneous outcome, which satisfies the second element of *Yunis*. Similarly. the facts alleged raise a plausible inference that the university discriminated against [Doe] "on the basis of sex"; satisfying the standard outlined in *Purdue. Purdue*, 928 F.3d at 667-68. Given what is actually alleged, Doe has presented a plausible claim for a violation of Title IX and should be permitted the opportunity to develop these claims in discovery.

### 4. Doe States a Claim for Declaratory Relief

Similar to injunctive relief, there must be ongoing harm to obtain declaratory relief. *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). As stated above, this Court already held that Doe suffers ongoing harm by holding that Doe's claims for injunctive relief fall within the *Ex Parte Young* exception and are not barred, *Doe v. Va. Polytechnic Inst. & State Univ.*, Nos. 7:18-cv-170; 320; 492; 523, 2019 U.S. Dist. LEXIS 137871, at *9-10 (W.D. Va. Aug. 15, 2019).

Doe has standing to pursue a claim for declaratory relief, given the nature of the ongoing harm – namely, the records associated with the finding of responsibility against him. Contrary to Defendants' characterization, he does not seek to merely rectify the harm done in the past. He seeks to rectify ongoing harm. Under the *Ex Parte Young* exception, the Eleventh Amendment does not bar a federal court from awarding this type of equitable prospective relief to Doe. *See Johnson*, 71 F. Supp. 3d at 1230 ("a request to expunge an academic record is a request for prospective relief" and not barred by the Eleventh Amendment); *see also Doe v. Cummins*, 662 Fed.

App'x 437, 444 (6th Cir. 2016) (no Eleventh Amendment bar to expunging record of sexual assault discipline from a state university's files); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (negative entries in a student's university records stemming from an allegedly unconstitutional action presented a continuing violation sufficient to overcome Eleventh Amendment immunity); *Shepard v. Irving*, 77 Fed. App'x 615, 620 (4th Cir. 2003) (request to expunge grade from record is not barred by Eleventh Amendment); *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995); *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado,* 255 F. Supp. 3d 1064, 1081–82 (D. Colo. 2017). The Seventh Circuit recently upheld injunctive relief in the Title IX context relating to discipline records. *Purdue*, 928 F.3d at 666. That court held, "[Doe's] marred record is a continuing harm for which he can seek redress." *Id.*

Just as there is a "continuing harm" for injunctive relief, there is "continuing harm" that can be rectified by a declaration from the Court. Doe seeks a declaration regarding the ongoing harm to effectively expunge his record relating to the incorrect finding of responsible for sexual misconduct. This claim should not be dismissed.

<u>Conclusion</u>

For the foregoing reasons, Doe's amended complaint should not be dismissed.

DATED: November 7, 2019                    Respectfully submitted,

                                           <u>By: /s/ Jesse R. Binnall</u>
                                           Harvey & Binnall, PLLC
                                           Jesse R. Binnall

Lindsay R. McKasson
717 King Street, Suite 300
Alexandria, Virginia 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
Email: jbinnall@harveybinnall.com
          lmckasson@harveybinnall.com
*Pro hac vice*


Nesenoff & Miltenberg LLP
Andrew T. Miltenberg
Tara Davis
363 Seventh Avenue, 5th Floor
New York, NY 10001-3904
Telephone: (212) 736-4500
Facsimile: (212) 736-2260
Email: amiltenberg@nmllplaw.com
          tdavis@nmllplaw.com
*Pro hac vice*

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2019, I filed the foregoing using the

Clerk's CM/ECF system, which will provide notice to all counsel of record.

By: <u>/s/ Jesse R. Binnall</u>
Harvey & Binnall, PLLC
Jesse R. Binnall, VSBNo. 79292
717 King Street, Suite 300
Alexandria, Virginia 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
Email: jbinnall@harveybinnall.com
